IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

LEA A. T.,[1] )
 )
      Plaintiff, )
 )
v. ) Case No. 20-cv-180-RJD[2]
 )
COMMISSIONER of SOCIAL SECURITY, )
 )
      Defendant. )
 )

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), Plaintiff, represented by counsel, seeks judicial review of the final agency decision denying her application for Supplemental Security Income (SSI) benefits and Disabled Widow's Benefits (DWB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for DWB on December 14, 2016, and SSI on November 29, 2016, alleging a disability onset date of September 16, 2015, in both applications. After holding an evidentiary hearing, an ALJ denied the application on October 31, 2017. (Tr. 14-26). The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final agency decision. (Tr. 1). Plaintiff exhausted her administrative remedies and filed a timely complaint with this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

---

[1] In keeping with the court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Docs. 11 & 12.

1. The ALJ violated SSR 96-8p because he did not resolve the conflicts between his RFC and the medical opinions.

2. The ALJ violated SSR 16-3P when failing to adequately address Plaintiff's allegations of pain.

## **Applicable Legal Standards**

To qualify for SSI or DWB, a claimant must be disabled within the meaning of the applicable statutes.[3] Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a).

To determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 404.1520.

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. A negative answer at any step, other than at step three, precludes a finding of disability. The plaintiff bears the burden of proof at steps one through four. Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001).

---

[3] The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. The regulations pertaining to DWB are found at 20 C.F.R. §§ 404.335 and 404.337. The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The definition of disability for SSI and DWB is the same. See, 20 C.F.R. § 404.335(c), incorporating the definition of disability set forth in the DIB regulations into the DWB regulations. As is relevant to this case, the DIB and SSI statutes are identical. Most citations herein are to the DIB regulations out of convenience.

It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether Plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The Supreme Court defines substantial evidence as, "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

The ALJ followed the five-step analytical framework described above. He determined that Plaintiff is the unmarried widow of the deceased insured worker. The ALJ determined that Plaintiff engaged in work activity after the alleged onset date, but it did not rise to the level of substantial gainful activity. To be eligible for DWB, Plaintiff had to have been disabled before the last day of the "prescribed period;" that date is December 31, 2021.

The ALJ found that Plaintiff had severe impairments of obesity; disorders of the bilateral knees; a left upper extremity impairment; disorders of the spine; and mental impairments including depression and anxiety.

The ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work, except she:

> …can only frequently reach with the left upper extremity; occasionally use foot controls bilaterally; occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds; frequently balance; and occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to vibrations, extreme heat and cold, and hazards. The claimant is limited to simple goal-oriented tasks, simple instructions, simple decisions; frequent contact with coworkers and supervisors; occasional work-related contact with the public; and can sustain frequent changes in the workplace.

(Tr. 19).

Based on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff was unable to do her past work yet concluded there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

### **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to Plaintiff's arguments.

**1.    Agency Forms**

Plaintiff was born in 1964 and was 53 years old on the date of the ALJ's decision. (Tr. 314). Plaintiff said she stopped working in October 2014 because of her conditions. She worked as a convenience store cashier from 1997 to 2014; was self-employed from 2003 to 2005; a direct support person for Community Integrated Living Arrangement (CILA) in 2007; and a workshop supervisor from 2009 to 2010. (Tr. 319-20).

In a Function Report submitted in April 2017, Plaintiff said she has chronic pain in her back and knees that makes it difficult to sit or stand for long. This then makes Plaintiff frustrated and more depressed. Plaintiff said she uses the sink to wash herself because it hurts to step into

the tub or shower, she cannot stand long to cook, and she must sit to fold laundry. Plaintiff said her conditions affect her sleep. (Tr. 380-81). Plaintiff said she does not do house or yard work because of pain. Plaintiff said she is unable to go out of the house alone because she gets anxiety and hyperventilates, and she panics when she drives. (Tr. 383). Plaintiff said she does not socialize much because of her pain, she will get aggravated, or she gets depressed and cries. Plaintiff said her conditions affect her lifting, squatting, bending, standing, walking, sitting, kneeling, stair-climbing, task completion, and concentration. Plaintiff said her ability to pay attention depends on her pain, anxiety, and if she is around a lot of people. Plaintiff said she does not handle changes in routine as well as she used to, and she gets mad, frustrated, and irritated more. (Tr. 385-86).

A prior application had been denied on November 16, 2016. (Tr. 315).

### 2. Evidentiary Hearing

Plaintiff was represented by an attorney at both evidentiary hearings in September 2015 and September 2018. (Tr. 33, 66).

Plaintiff said, while a cashier, every two hours she had a fifteen-minute break to get relief from standing. Plaintiff testified that she was terminated from her cashier position, partially due to taking family medical leave while her late husband was struggling with medical issues. (Tr. 39-40). Plaintiff said she lives with an elderly woman, and that woman does most of the cleaning. Plaintiff only dusts a little and makes easy meals. (Tr. 42). Plaintiff said she goes to physical therapy because the shots stopped working. (Tr. 45-46). Plaintiff said she has daily knee pain that is exacerbated by stair-climbing, standing, and walking. Plaintiff said pain increases, her legs go numb, and she has an icepick sensation when she stands for too long. (Tr. 48-49). Plaintiff said she has daily low back pain that is exacerbated by sitting, standing, and lifting. (Tr. 51). Plaintiff also experiences neck pain that is exacerbated by turning her head fast. (Tr. 53). Plaintiff testified

that she also has psychiatric issues such as experiencing a breakdown after her husband passed. Plaintiff said she is more emotional now, and that affects her ability to focus. (Tr. 55).

The VE testified that a person with Plaintiff's RFC could not do her past work. The ALJ presented hypotheticals to the VE which corresponded to the ultimate RFC findings. The VE testified this person could do jobs such as mail clerk positions, cleaner/maid positions, and office helper positions. The VE testified that an employer would not tolerate more than ten percent off-task behavior, and employers would only tolerate one day a month of unscheduled absences. (Tr. 61-62).

### 3. Relevant Medical Records

Plaintiff underwent over twenty nerve block and injection appointments between September 2014 and January 2018, to address lumbosacral spondylosis, panniculitis[4], cervical spondylosis, sacroiliitis, and unilateral primary osteoarthritis of the knees. (Tr. 441, 461, 463, 580, 582, 585, 589, 595, 605, 617-18, 624, 626, 630, 639, 685, 687, 690, 715-16, 886, 974, 1037, 1125, 1201, 1203, 1206, 1209-10, 1213, 1215).

Plaintiff presented to Convenient Care Clinic twelve times between February 2015 and September 2017, reporting sharp, dull, aching, tight back pain; arthralgias; joint pain; numbness in her thighs if she sits too long; pain when she stands too long; numbness and tingling in her hands since undergoing cervical injections; needing stronger medication for back pain; depression; anxiety; and suicidal ideation. (Tr. 474, 476, 478, 482, 484, 487, 489, 538, 540, 542, 544, 547, 553, 555, 557, 741, 743, 745, 747, 749). Physical examinations revealed anxiousness; good insight and judgment; a normal mood and affect; alertness; orientation to time, place, and person; normal recent and remote memory; a normal musculoskeletal exam with some tenderness at times; a

---

[4] Panniculitis refers to, "inflammation of the subcutaneous fat, characterized by development of single or multiple cutaneous nodules." https://medical-dictionary.thefreedictionary.com/panniculitis, visited on August 19, 2020.

normal gait; positive bilateral straight leg raises; a painful lumbar spine and range of motion; and scapula pain. (Tr. 476, 480, 484-85, 489-90, 540-41, 545, 551, 556, 559-60, 743, 747, 751). Assessments included backache, mixed anxiety, and depressive disorder, and plans included medication modifications and a psychology referral. (Tr. 477, 481, 485, 490, 541, 545, 551, 743, 748, 752).

Plaintiff presented to the Brain & Spine Institute eleven times between August 2015 and September 2018 reporting low back pain despite injections; right posterior neck pain; bilateral leg numbness and tingling; anxiety; depression; and joint pain and swelling. (Tr. 567, 610, 612, 619-20, 631, 633, 635-36, 642, 644, 697, 1220-21, 1224, 1226, 1304-05). Physical examinations revealed cervical and lumbar spine tenderness; bilateral sacroiliac joint tenderness; increased pain with extension; neck pain with rotation; normal balance; normal gait despite an instance of a slightly compensated gait; unremarkable heel and toe walking; normal memory; an appropriate mood and affect; and orientation to time, place, person and situation. (Tr. 569, 611, 614, 621, 633, 637, 644-45, 699, 1223, 1226, 1307). The assessments included lumbosacral spondylosis without myelopathy, sacroiliitis, cervicalgia, cervical spondylosis, cervical radiculopathy, and dorsalgia, and plans included injections, nerve blocks, medications, back stretches, strengthening exercises, physical therapy, and radiologic studies. (Tr. 570, 615, 622, 634, 638, 645, 699, 1223, 1226-27, 1307-08). A nurse practitioner reviewed radiological studies and said, "MRI of the cervical spine completed 5/9 reveals degenerative changes at C5-6 and C6-7 with mild central and mild to moderate bilateral foraminal stenosis at C5-6." (Tr. 1227).

Plaintiff underwent a spine x-ray on December 22, 2015, and the impression was, "Early degenerative disc disease C5-C7. No listhesis." (Tr. 518). Plaintiff also underwent a spine MRI, and the impression was, "1. Mild lumbar degenerative spondylosis unchanged from 06/25/2014.

2. 2 mm degenerative anterolisthesis L2 on L3. 3. No pars defects or lumbar disc herniations." (Tr. 519-20).

Plaintiff underwent over twenty physical therapy appointments between December 2015 and September 2018 to address cervical, lumbar, back, and knee pain. (Tr. 829, 834-35, 844-46, 848, 859-61, 869-70, 1227-30, 1316-56).

Plaintiff presented to the emergency department at St. Joseph Memorial Hospital on March 3, 2016, complaining of tingling in her hands after a spinal injection. (Tr. 444). A physical examination revealed Plaintiff was in no acute distress; was cooperative; had a nontender neck with full range of motion; was alert and oriented; had a normal mood and affect; and had a normal gait. (Tr. 454-55).

Plaintiff underwent a cervical spine CT scan on April 8, 2016, and the impression was:

> 1. The vertebral bodies are normal in height and alignment. The intervertebral disc spaces well maintained with respect height with exception of C5-6 which shows moderate loss of disc height and spondylosis. 2. There is no evidence of central canal stenosis at any reviewed levels. 3. There is moderate bilateral foraminal stenosis at C5-6. The remaining foramina appear adequately patent. 4. There is no evidence of fracture and dislocation.

(Tr. 649-50).

Plaintiff presented to the Orthopaedic Institute nine times between May 2016 and December 2017 reporting left knee pain, swelling, crepitus, decreased range of motion, stiffness, and instability; muscle weakness; difficulty walking; numbness in extremities; back pain; paresthesia; only two days of relief with an injection; and depression. (Tr. 578-79, 587-88, 590-91, 593-94, 683-84, 714-15, 1199-00, 1208, 1245-47). Physical examinations revealed a limp at times; a normal gait at times; a slow gait at times; both adequate and decreased quad tone and strength; tight hamstrings; difficulty arising from a chair; decreased quad strength; left knee swelling; pain with a dynamic patellar compression test of both knees; pain over the lateral joint

line; degenerative changes mostly in the patellofemoral compartment; lateralization of the patella; peripatellar tenderness; an active, painful range of motion; bilateral knee crepitation; medial discomfort but no meniscal signs; edema; normal memory; and orientation to time, place, person and situation. (Tr. 579, 588, 591-92, 595, 684, 715, 1200, 1209, 1247). The assessment included left knee pain, primary osteoarthritis of the left and right knees, and plans included imaging, injections, nerve blocks, a physical therapy referral, weight loss, home exercises, surgery consideration, and medications. (Tr. 580, 589-90, 592, 595, 685, 716, 1201, 1210, 1247).

Plaintiff presented to the Union County Hospital emergency department on May 16, 2016, reporting knee pain. A physical examination revealed Plaintiff was alert; was oriented to person, place, time and situation; had a normal mood and affect; had a tender and swollen posterior bursa; and had a normal gait. The assessment included bursitis, and plans included medications. (Tr. 510-12).

Plaintiff underwent a left knee MRI on July 5, 2016, and the impression was:

> 1. Intrasubstance degeneration versus contusion of the medial meniscus without a discrete surfacing meniscal tear. 2. Medial patellofemoral compartment osteoarthrosis with most severe thinning of the cartilage of the patella. Stress reaction versus contusion of the medial femoral condyle posteromedially without a definite fracture. 3. Small joint effusion with synovitis, nonspecific. Popliteal cyst ligaments. 4. Sprains with scarring of the medial and lateral collateral ligaments. 5. Patellar/quadriceps tendinosis. Lateral sublaxation of the patella. Sprains with scarring of the patellar retinacula.

(Tr. 508-09).

Plaintiff presented to the Union County Hospital emergency department on July 31, 2016. A physical examination revealed Plaintiff was alert, pleasant and cooperative, and she had a calm affect. (Tr. 501).

Plaintiff presented to the Union County Hospital emergency department on September 29, 2016, reporting back pain. (Tr. 491, 496). A physical examination revealed Plaintiff was alert;

was oriented to person, pace, time, and situation; and had musculoskeletal normality. (Tr. 492). The assessment included thoracic strain, and plans included medications. (Tr. 494).

Plaintiff presented to Fred Klug, a clinical psychologist and state agency psychological consultant, on February 2, 2017, for a psychological consultative examination. (Tr. 667). The diagnostic impressions included general anxiety disorder, persistent depressive disorder, spinal stenosis, scoliosis, and osteoarthritis. Dr. Klug said Plaintiff was alert and oriented; had poor attention span; had good concentration; had intact immediate memory; had poor short-term memory; had intact long-term memory; had poor reasoning, abstract thinking, insight, and judgment; had low-average intellectual functioning; had goal-oriented and relevant thought processes; had frequent worry; and could participate in the management of her own funds. (Tr. 670-71).

Plaintiff presented to Chelsea Treece, a physician assistant at Rural Health, Inc., four times between April 2017 and April 2018, reporting arthralgias; bilateral knee pain; back pain; and depression. (Tr. 1249, 1251, 1256, 1263, 1265, 1271, 1273). Physical examinations revealed Plaintiff had good judgment; was anxious, depressed and tearful; had limited range of motion in both knees; had lumbar spine tenderness; had normal gait and station; and was alert and oriented to time, place and person. (Tr. 1251, 1256-57, 1265, 1273). The assessments included chronic low back pain, scoliosis of the lumbar spine, and depressive disorder, and plans included medication modifications. (Tr. 1265, 1273).

Plaintiff presented to the Union County Hospital emergency department on April 26, 2017, reporting hip and leg pain after yard work. A physical examination revealed Plaintiff was alert and oriented to person, place, time and situation; had limited active and passive range of motion in her left leg; had painful hip range of motion; and had tenderness. Plaintiff was given pain

medications.  (Tr. 738-41).

Plaintiff underwent a lumbar spine MRI on August 31, 2017, and the impression was:

1. L-spine minimal spondylosis, minor facet arthropathy, and mild DDD 2. Multilevel foraminal narrowing. Left L2 nerve root contacts the disc bulge near the foramen, and could be a source for pain/radiculopathy. 3. Triangulation of the canal at L2-3. 4. Benign hemangiomas at T12, L1, L4, and S1 5. Right hepatic lobe stable cyst vs hemangioma.

(Tr. 731-32).

Plaintiff presented to Katrina Tripp, a physician assistant at Rural Health, Inc., five times between September 2017 and April 2018 for mental health issues, reporting depression that interferes with household activities; crying spells; flashbacks; irritability; mood swings; anxiety; weight gain; fatigue; hypersomnia; restless sleep; paranoia; emotional lability; hypersensitivity; muscle tension; low self-esteem; social withdrawal; seasonal symptoms; decreased effectiveness and productivity; excessive sweating; and tremor. (Tr. 1251-53, 1257, 1259-60, 1262, 1265, 1267-68, 1270).  Mental status examinations revealed Plaintiff was agitated; has a sad, irritable and labile mood; had an anxious, sad, tearful and sometimes flat affect; and had circumstantial thought processes.  (Tr. 1253-54, 1259, 1262, 1267, 1270).  The assessments included chronic recurrent major depressive disorder, chronic post-traumatic stress disorder, and anxiety disorder, and plans included continuing medications.  (Tr. 1254, 1260, 1262-63, 1268, 1271).

Plaintiff presented to the SIH Memorial Hospital emergency department on September 23, 2017, and a physical examination revealed Plaintiff was alert and oriented to person, place and time; had normal neck range of motion; and had normal musculoskeletal range of motion.  (Tr. 769).

Plaintiff underwent an electrophysiological study on March 20, 2018, and the impression was normal.  Recommendations included a physical therapy consultation for a trial of cervical

traction. (Tr. 724).

Plaintiff underwent a cervical spine x-ray on May 9, 2018, and the impression was, "Degenerative changes and mild listhesis of the mid spine…" (Tr. 720). Plaintiff also underwent a cervical spine MRI, and the impression was, "1. Mild discogenic disease C5-6 and C6-7 with mild spinal stenosis at C5-6. 2. Mild to moderate bilateral foraminal stenosis C5-6." (Tr 722).

Plaintiff presented to Cheryl Fuller, a nurse practitioner at Rural Health, Inc., on July 26, 2018, and August 22, 2018, reporting arthralgias, bilateral knee pain, back pain, swelling, and depression. (Tr. 1282, 1284-85, 1287). A physical examination revealed Plaintiff had good judgment; had a normal mood and affect; was alert and oriented to time, place and person; had 1+ non-pitting pedal edema bilaterally; had normal musculoskeletal tone and motor strength; and had normal gait and station. (Tr. 1284, 1287). The assessment included lower extremity edema, chronic recurrent major depressive disorder, cervical spinal stenosis, and cervical radiculopathy. Plans included medications. (Tr. 1284, 1287-88).

## Analysis

First, Plaintiff asserts the ALJ erred by failing to account for specific deficits of concentration, persistence, and pace within the RFC finding. The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE. The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining

concentration, persistence or pace. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010); *Yurt v. Colvin*, 758 F.3d at 857; *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Taylor v. Colvin*, 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as amended on reh'g (Apr. 13, 2018); *Winsted v. Berryhill*, 915 F.3d 466, 471 (7th Cir. 2019), *DeCamp v. Berryhill*, 916 F.3d 671, 676 (7th Cir. 2019). "The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620.

Here, the ALJ found that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace at step three of the sequential analysis when determining whether Plaintiff's mental impairments meet or equal a listed impairment. The ALJ noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 19).

What the ALJ did not discuss, however, were the findings of the state agency consultants. Both Dr. Donald Henson and Dr. M. W. DiFonso said Plaintiff was moderately limited in the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerances; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms; and the ability to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 141, 173). The fact that these findings were from check-box sections of standardized forms as opposed to narrative explanations does not render them useless. "But even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the

PRT and MRFC forms." *DeCamp*, 916 F.3d at 676. Therefore, this requires remand.

In regard to Plaintiff's mental limitations, the ALJ's RFC finding says she, "is limited to simple goal-oriented tasks, simple instructions, simple decisions…and can sustain frequent changes in the workplace setting." (Tr. 19). Plaintiff suggests this language does not adequately account for moderate limitations in concentration, persistence or pace. More specifically, Plaintiff argues the RFC fails to address Plaintiff's ability to complete a workday, maintain regular attendance, be punctual, and maintain appropriate pace. This Court agrees. A limitation to simple, routine and rote tasks does not account for difficulties in concentration arising from mental health issues. *Varga v. Colvin*, 794 F.3d at 815. Moreover, the ALJ used the terminology that the Seventh Circuit has continually viewed as insufficient. Therefore, this requires remand.

There are two recent Seventh Circuit cases that speak directly to this issue: *Martin v. Saul*, 950 F.3d 369 (7th Cir. 2020) and *Crump v. Saul*, 932 F.3d 567 (7th Cir. 2019). In *Martin*, the court held the ALJ correctly accounted for Martin's concentration, persistence or pace limitations by not "assuming that restricting [Martin] to unskilled work would account for her mental impairments." *Id*. at 374. "The ALJ incorporated pace-related limitations by stating that Martin needed flexibility and work requirements that were goal-oriented." *Id*. The ALJ in *Crump* used language in the RFC that the Seventh Circuit has repeatedly found insufficient such as, "simple, routine, repetitive tasks with few workplace changes." *Crump*, 932 F.3d at 569. The court held the ALJ failed to incorporate limitations like Crump's likelihood of being off task twenty percent of the time. *Id*. at 570.

Here, the ALJ did not go to lengths as the ALJ in *Martin* did. The present case is similar to *Crump* in that the ALJ limited Plaintiff to work involving "simple goal-oriented tasks, simple instructions, simple decisions" without adding more. This, as established above, is not enough.

The ALJ does note that Plaintiff can handle frequent changes in the workplace. However, that does not fix the deficiencies within the RFC. Nevertheless, "observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis, including, for example, over the course of a standard eight-hour work shift." *Crump*, 932 F.3d at 570. The Seventh Circuit put it succinctly in *Martin*:

> As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. . . . Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

950 F.3d at 373-74. Therefore, without more, the RFC does not adequately account for moderate limitations in concentration, persistence or pace.

The Commissioner relies in part on *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). There, the Seventh Circuit rejected the plaintiff's argument that the ALJ erred by omitting a reference to a moderate limitation in concentration, persistence or pace from the RFC assessment and hypothetical question where "according to the medical evidence, his impairments surface only when he is with other people or in a crowd." *Jozefyk*, 923 F.3d at 498. That case is distinguishable from the case at hand. The Seventh Circuit explained its holding in *Jozefyk* in a later case:

> In closing, we owe a word to the Commissioner's reliance on our recent decision in *Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019). We do not read *Jozefyk* to save the shortfalls in the ALJ's analysis here. In *Jozefyk*, we determined that any error in formulating the RFC was harmless because the claimant had not testified about any restrictions in his capabilities related to concentration, persistence, or pace, and the medical evidence did not otherwise support any such limitations. 923 F.3d at 498. As the Commissioner concedes, the facts here are different. The medical evidence plainly shows, and the ALJ recognized, that Crump suffers from CPP limitations. And, unlike in *Jozefyk*, Crump testified consistently with the medical treatment notes about how her bipolar disorder impairs her ability to concentrate well enough to work for a sustained period.

*Crump*, 932 F.3d at 571. Here, Plaintiff testified that she has difficulty focusing due to her

impairments.  (Tr. 55).

As a sub-issue to Plaintiff's concentration, persistence or pace argument, Plaintiff argues the ALJ erred by not including the limitations he found credible within the medical opinions regarding Plaintiff's ability to complete a full workday and maintain concentration.  Plaintiff also argues that she cannot perform the mail clerk and office helper positions as they require stronger mental abilities than Plaintiff argues she has.  These arguments piggyback off the above discussion in which it was decided that the ALJ's mental RFC was lacking, and, therefore, need not be discussed at length here.

Lastly, the Commissioner points out that the "B" criteria have been amended and attempts to minimize the significance of the findings of moderate limitations by pointing out that "moderate" limitation means that a claimant's ability to maintain concentration, persistence or pace independently, appropriately, effectively, and on a sustained basis is fair.  See, Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66164, 2016 WL 5341732 (Sept. 26, 2016) (effective Jan. 17, 2017).  But a moderate limitation is not the same as "no" limitation.  A "mild" limitation means that functioning is "slightly" limited and a "marked" limitation means that functioning is "seriously limited."  Moderate is between mild and marked. 81 Fed. Reg. 66138, 66164.  Therefore, a moderate limitation is more than a slight limitation, and the ALJ may not overlook the designation of moderate limitations in the RFC.  Further, these definitions do not represent a change in the meaning of these terms:

> Third, we have used the words "mild," "moderate," "marked," and "extreme" under our prior rules for many years. Although we did not provide definitions for most of these terms until now, the definitions in final 12.00F are consistent with how our adjudicators have understood and used those words in our program since we first introduced the rating scale in 1985. As a result, the definitions we provide in these rules do not represent a departure from prior policy.

81 FR 66138, 66147.

For the reasons stated above, the ALJ did not adequately account for concentration, persistence or pace within the RFC finding. Therefore, this requires remand.

Second, Plaintiff asserts the ALJ erred by finding Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence.

SSR 16-3p supersedes the previous SSR on assessing the reliability of a claimant's subjective statements. SSR 16-3p became effective on March 28, 2016 and is applicable here. 2017 WL 5180304, at *1. The new SSR eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character." SSR 16-3p continues to require the ALJ to consider the factors set forth in the applicable regulation, 20 C.F.R. § 404.1529. *Ibid*. at *10.

The new SSR does not purport to change the standard for evaluating the claimant's allegations regarding her symptoms. Thus, prior Seventh Circuit precedents continue to apply.

The findings of an ALJ as to the accuracy of a plaintiff's allegations are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). However, Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein. Furthermore, in a recent Seventh Circuit decision discussion about credibility, the court said the problem lies where the ALJ cites only to evidence in favor of their decision and fails to discuss the conflicting evidence. *Reinaas v. Saul*, 953 F.3d 461, 467 (7th Cir.

2020).

The ALJ "need not provide a complete written evaluation of every piece of testimony and evidence." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015) (citation and internal quotations omitted). However, the Seventh Circuit has "repeatedly held that although an ALJ does not need to discuss every piece of evidence in the record, the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014). Here, the ALJ relied on the record as a whole in evaluating Plaintiff's subjective allegations.

Plaintiff argues that the ALJ did not provide an adequate explanation as to the inconsistencies between Plaintiff's subjective allegations, the objective clinical evidence, and the treatment notes. On the contrary, the ALJ did just that at Tr. 20 and continued by explaining the testimony and medical records from Tr. 19-25. Plaintiff also argues the ALJ erred by saying Plaintiff's activities of daily living discounted her subjective allegations. "An ALJ may not equate activities of daily living with those of a full-time job…But an ALJ is not forbidden from considering statements about a claimant's daily life." *Jeske v. Saul*, 955 F.3d 583, 592 (7th Cir. 2020). An ALJ may consider the claimant's activities of daily living to determine whether the claimant's symptoms are as high in severity as alleged. *Id*. at 593. The ALJ did not rely solely on Plaintiff's activities of daily living to come to his conclusion. The ALJ relied upon the record as a whole. Therefore, this assertion is incorrect.

Lastly, Plaintiff argues, "The ALJ interjected his layperson judgement[sic] for that of medical professionals when weighing the diagnostic evidence against Tarr's allegations," and this consequently affected the ALJ's evaluation of Plaintiff's subjective allegations. (Doc. 19, p. 22). The Court rejects this argument.

The determination of RFC is an administrative finding that is reserved to the Commissioner. 20 C.F.R. §404.1527(d)(2). As stated above, the ALJ relied on all the evidence, both objective and subjective, in deciding on whether Plaintiff's subjective allegations are supported by the medical evidence. The simple act of the ALJ considering the objective and diagnostic evidence, subjective allegations, activities of daily living, and testimony evidence is not one that falls under the umbrella of playing doctor. The ALJ must do this in order to formulate an RFC that is representative of Plaintiff and her limitations. Plaintiff's arguments regarding this issue are little more than an invitation for this Court to reweigh the evidence. She has not identified a sufficient reason to overturn the ALJ's conclusion on the grounds that the ALJ may have played doctor. The ALJ's decision on this issue must be accepted if it is supported by substantial evidence, and the Court cannot substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Burmester*, 920 F.3d at 510; *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). Therefore, this Court rejects Plaintiff's argument.

This Memorandum and Order should not be construed as an indication that the Court believes Plaintiff was disabled during the relevant period or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Plaintiff's application for social security disability benefits is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of Plaintiff.

**IT IS SO ORDERED.**

**DATED: August 26, 2020**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**